## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Gerald Hordych and Lori Hordych, | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Case No. 10-16E |
| | ) | |
| Borough of North East et al., | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

### OPINION

Pending before the Court is Defendants' "Motion to Dismiss Amended Complaint Pursuant to F.R.C.P. 12(b)(6)" ("Defendants' Motion to Dismiss"), brought with respect to the Amended Complaint filed against them by Plaintiffs Gerald and Lori Hordych ("Plaintiffs") [Doc. #9]. Plaintiffs' Amended Complaint against Defendants Borough of North East, North East Police Department, Sylvain Cote, James Yanosko, and Charles Rosequist is brought pursuant to 42 U.S.C. § 1983 ("Section 1983" or "§ 1983") and the Fourth and Fourteenth Amendments to the United States Constitution. Amended Complaint, ¶ 1. For the reasons set forth below, Defendants' Motion to Dismiss is granted in part and denied in part.

I.      **Standard of Review**

A complaint will be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if it does not allege sufficient facts to state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965-66 (2007)). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that

discovery will reveal evidence of the necessary element." Phillips v. County of Allegheny, 515

F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 127 S.Ct. at 1965).

Under this standard, factual allegations of a complaint "must be enough to raise a right to

relief above the speculative level." Twombly, 127 S.Ct. at 1965. Thus, "a plaintiff's obligation

to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions,

and a formulaic recitation of the elements of a cause of action will not do." Id. (citations

omitted).

**II.     Factual Allegations**.

The Amended Complaint alleges as follows:

Plaintiffs are husband and wife who live in North East Pennsylvania. Amended

Complaint, ¶ 3. Defendant Borough of North East ("Defendant Borough") is a municipal

corporation and the public employer of the individual defendants. Id. at ¶ 6. At all times

relevant thereto, Defendants Sylvain Cote ("Officer Cote") and Defendant James Yanosko

("Officer Yanosko") were duly appointed police officers of the Defendant Borough acting under

color or law, to wit under color of the statutes, ordinances, regulations, customs and usages of the

Commonwealth of Pennsylvania and the Borough of North East. Id. at ¶ 4. At all times relevant

thereto, Defendant Charles Rosequist ("Chief Rosequist") was duly appointed and acting as the

Chief of Police of the Borough of North East and acting under color of law, to wit, under color of

the statutes, ordinances, regulations, policies, and customs of the Commonwealth of

Pennsylvania and the Borough of North East. Id. at ¶ 5.

On or about July 3, 2008, Plaintiffs were hosting an event at their home in North East

Borough for the purpose of obtaining items for the residents of the Soldiers and Sailors Home in

2

Erie Pennsylvania. Id. at ¶ 7.  Approximately 200 persons were at the party and a band was

performing. Id. at ¶ 8. At approximately 11:30 P.M., Officers Cote and Yanosko arrived at

Plaintiffs' residence and alleged that they had received a complaint about loud noise. Id. at ¶ 9.

Almost immediately both officers became extremely rude and abusive toward Plaintiffs. Id. at

¶ 10.  Officer Cote screamed at Plaintiff Gerald Hordych in front of his guests that "[h]e should

get a life and if you do not have one, I'll give you one." Id. To emphasize his point, Officer Cote

had his billy club in his hand in such a manner as to menace and threaten Plaintiffs.  Id.  Officer

Yanosko began screaming to the band to stop playing. Id. at ¶ 11. To emphasize his point,

Officer Yanosko had his billy club in his hand in such a manner as to menace and threaten

Plaintiffs.  Id.  Plaintiff Gerald Hordych turned and went into his residence, at which point,

Officers Cote and Yanosko, without authority, entered Plaintiffs' home. Id. at ¶ 12. At all times

during these events, Officers Cote and Yanosko were engaged in a joint venture. Id. at ¶ 15.  The

individual officers assisted each other in performing the actions described and lent their physical

presence and support and the authority of their office to each other during the events described.

Id.

Plaintiffs complained to Chief Rosequist, Officers Cote and Yanosko's immediate

supervisor, about their rude, abusive, menacing and threatening conduct. Id. at ¶ 13.  An

"investigation" was allegedly conducted by Chief Rosequist and the Defendant Borough; no

action was taken against Officers Cote and Yanosko for their conduct with respect to Plaintiffs.

Id. at ¶ 14.

Chief Rosequist at all times condoned and tolerated a practice of unreasonable, menacing,

threatening and abusive behavior on the part of the officers of the North East Police Department.

3

Id. at ¶ 16.  Chief Rosequist also, through deliberate indifference, permitted and tolerated a pattern of unreasonable, menacing, threatening and abusive behavior by the officers of the North East Police Department. Id. at ¶ 18.

Defendant Borough also condoned and tolerated a pattern and practice of unreasonable, menacing, threatening, and abusive behavior on the part of the officers of the North East Police Department. Id. at ¶ 17.  Defendant Borough also, through deliberate indifference, permitted and tolerated a pattern of unreasonable, menacing, and threatening behavior by the officers of the North East Police Department and used practices and procedures that resulted in officers of the North East Police Department violating the constitutional rights of the residents of North East and others. Id. at ¶ 19.  The acts, omissions, systematic flaws, and customs of Defendant Borough caused the police officers of the North East Police Department to believe that unreasonable, abusive, menacing and threatening behavior was appropriate, because their actions were tolerated by Chief Rosequist and Defendant Borough and would not be properly investigated by the appropriate officials of North East, making it very likely that such behavior would continue into the future. Id. at ¶ 20.

**III.    Legal Analysis**.

The Amended Complaint allege claims against Defendants Cote, Yanosko, Rosequist and Borough of North East brought pursuant to Section1983 for violation of Plaintiffs' rights under Fourth and Fourteenth Amendments to the United States Constitution.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulations, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the

4

> jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Id. "In any § 1983 action the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred." Baker v. McCollan, 443 U.S. 137, 145 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).

Here unquestionably the conduct complained of was committed by persons acting under color of state law. See Monroe v. Pape, 365 U.S. 167, 187, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), overruled on other grounds by Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Our focus is on the second essential element-whether the Defendants' alleged conduct, if true, violated Plaintiffs' rights under the Fourth and Fourteenth Amendments to the United States Constitution.

**A. Plaintiffs' Section 1983 claim against Officers Cote and Yanosko individually based upon their allegedly entering Plaintiffs' home without authority to do so in violation of the Plaintiffs' rights under the Fourth Amendment.**

Defendants argue that to the extent Plaintiffs' Amended Complaint alleges a Section 1983 claim against Officers Cote and Yanosko on the basis that they violated Plaintiffs' rights under the Fourth Amendment to the United States Constitution when they allegedly entered Plaintiffs'

5

home without authority to do so, said claim must be dismissed for failure to state a claim upon

which relief can be granted. Defendants' Brief in Support of Motion to Dismiss Amended

Complaint Pursuant to F.R.C.P. 12(b)(6) ("Defendants' Supporting Brief"), pp. 5-6. Plaintiffs

disagree, arguing in opposition: "the physical entry of a private home is the 'chief evil' against

which the Fourth Amendment is directed. The Fourth Amendment has drawn a firm line at the

entrance to a house. When Officers Cote and Yanosko crossed that line they clearly and directly

violated Plaintiffs rights under the Fourth Amendment." Plaintiffs' Brief in Opposition to

Defendants' Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) ("Plaintiffs' Opposition Brief"), p.

6.

> It is well established that:

> "The right of the people to be secure in their . . . houses . . . shall not be violated."
> That language unequivocally establishes the proposition that "[a]t the very core
> [of the Fourth Amendment] stands the right of a man to retreat into his own home
> and there be free from unreasonable governmental intrusion."   . . . Absent
> exigent circumstances, that threshold may not reasonably be crossed without a
> warrant.

Payton v. New York, 445 U.S. 573, 589-90 (1980) (quotations omitted). See also U.S. v.

Martinez-Fuerte, 428 U.S. 543, 561, 96 S.Ct. 3074, 3084 (1976) ("the sanctity of private

dwellings (is) ordinarily afforded the most stringent Fourth Amendment protection."); U.S. v.

U.S. Dist. Court for the Eastern Dist. of Mich., Southern Division, 407 U.S. 297, 313, 92 S.Ct.

2125, 2134 (1972) ("physical entry of the home is the chief evil against which the wording of the

Fourth Amendment is directed . . ."); Silverman v. U.S., 365 U.S. 505, 511, 81 S.Ct. 679, 683

(1961)("[at] the very core [of the Fourth Amendment] stands the right of a man to retreat into his

own home and there be free from unreasonable (government) intrusion."); U.S. v. Williams, 612

6

F.2d 735, 738 (3d Cir. 1979), cert. den'd, 445 U.S. 934, 100 S.Ct. 1328 (1980) ("[i]n our

Constitutional jurisprudence no subject has been so zealously protected from intrusion or seizure

as the private dwelling place."). In their Amended Complaint, Plaintiffs allege that at some point

after Officers Cote and Yanosko arrived at Plaintiffs' home, Plaintiff Gerald Hordych turned and

went into his residence, at which point, Officers Cote and Yanosko, without authority, entered

Plaintiffs' home. Amended Complaint, ¶ 12. If true, this constitutes a violation of Plaintiffs'

rights under the Fourth Amendment. Defendants are incorrect when they argue Plaintiffs have

not alleged a violation of their rights under the Fourth Amendment. Defendants' motion to

dismiss Plaintiffs' Section 1983 claim against Defendants Cote and Yanosko individually to the

extent it is premised upon a violation of the Plaintiffs' rights under the Fourth Amendment to the

United States Constitution is denied.

**B. Plaintiffs' Section 1983 claim against Officers Cote and Yanosko individually based upon their allegedly verbally abusing Plaintiffs while threatening and menacing them with a billy club in violation of the Plaintiffs' rights under the Fourteenth Amendment.**

Defendants also argue that Plaintiffs' Section 1983 claim against Officers Cote and

Yanosko must be dismissed for failure to state a claim upon which relief can be granted to the

extent their Section 1983 claim is based upon the premise that the officers' conduct violated

Plaintiffs' rights under the Fourteenth Amendment to the United States Constitution when they

verbally abused them while threatening and menacing them with a billy club. Defendants'

Supporting Brief, pp 3-5.

7

Plaintiffs argue in opposition that the officers violated their civil rights "when they verbally abused them and threatened and menaced them with their billy clubs" and cite in support thereof Northington v. Jackson, 973 F.2d 1518 (10th Cir. 1992) and Douglas v. Marino, 684 F.Supp. 395 (D.N.J. 1988).

Defendants filed a reply brief with respect to this part of Plaintiffs' Section 1983 claim, contending that the facts in Northington and Douglas are distinguishable from the facts alleged in the instant matter:

> [b]oth cases cited by plaintiffs involve threats of murder, reinforced by physical acts with a lethal weapon. However, in their Amended Complaint, Plaintiffs do not complain of a specific physical threat at all, let alone the threat of murder involved in the two cases cited by Plaintiffs. Further, the "accompanying physical act" alleged by Plaintiffs is that the Officers had their "billy clubs" in their hands in a manner as to menace and threaten the Plaintiffs. Plaintiffs do not allege that the Officers were in close proximity to Plaintiffs at that time, nor that they actually touched the "billy clubs" to Plaintiffs as alleged in *Northington.*

Defendants' Reply Brief in Support of Motion to Dismiss Amended Complaint Pursuant to F.R.C.P. 12(b)(6), p. 2.

While Plaintiffs do not specifically articulate what aspect of their rights under the Fourteenth Amendment allegedly were violated by Officers Cote and Yanosko's conduct, we read the Amended Complaint to be alleging a violation of Plaintiff's liberty interest in personal security which is protected under the due process clause of the Fourteenth Amendments. In Ingraham v. Wright, 430 U.S. 651, 97 S.Ct. 1401 (1977), the United States Supreme Court stated, "[a]mong the historic liberties [protected by the due process clause] was a right to be free from, and to obtain judicial relief for, unjustified intrusions on personal security." Id. at 673.

Allegations of verbal abuse or harassment are generally not actionable under Section 1983. For example, in Hopson v. Fredericksen, 961 F.2d 1374 (8th Cir. 1992), where an officer

8

had uttered a racial slur and threatened to "knock" [plaintiff's] remaining teeth out of his mouth"

if he remained silent, the court held that said conduct "failed to rise to the level of a 'brutal' and

'wanton act of cruelty' and so dismissed plaintiff's Section 1983 excessive force claim. Id. at

1379. Courts have held, however, that a plaintiff may obtain relief under Section 1983 if verbal

threats are accompanied by a reinforcing act. For example, in Northington, *supra.*, cited to by

Plaintiffs, the 10th Circuit court determined that a pro se prisoner's allegation that a sheriff's

deputy had put a service revolver to his head and threatened to shoot him stated a Section 1983

claim under the rubric of the Eighth Amendment's prohibition against cruel and unusual

punishment as applied to the states through the Fourteenth Amendment. Northington, 973 F.2d at

1523. Similarly, in Douglas, *supra.*, also cited to by Plaintiffs, the district court determined that

the plaintiff, a prisoner, had stated a viable Section 1983 claim for violations of the Eighth and/or

Fourteenth Amendments against a prison employee who had sworn at him, pulled out a butcher

knife, threatened to kill him, and told him to come into a storage room where he "would really

f*** [the prisoner] up." Douglas, 684 F.Supp. at 395.

We find that the allegations contained in Plaintiffs' Amended Complaint that Officer

Yanosko "began screaming to the band to stop playing," while he "had his billy club in his hand

in such a manner as to menace and threaten Plaintiffs," do not state a Section 1983 claim for

violation of their rights under the Fourteenth Amendment upon which relief can be granted.

Defendants' motion to dismiss the Section 1983 claim against Officer Yanosko based upon these

allegations for failure to state a claim upon which relief can be granted is granted. This dismissal

is without prejudice to file an amendment curing this deficiency, within the time frame set forth

in the accompanying Order.

To the contrary, we find that the allegations contained in Plaintiffs' Amended Complaint that Officer Cote "screamed at Gerald Hordych in front of his guests that "[h]e should get a life and if you do not have one I'll give you one" while Officer Cote "had his billy club in his hand in such manner as to menace and threaten Plaintiffs," do state a Section 1983 claim for violation of Gerald Hordych's rights under the Fourteenth Amendment upon which relief can be granted. Defendants' motion to dismiss the Section 1983 claim against Officer Cote based upon these allegations is denied.

**C.  Plaintiffs' Section 1983 claim against Defendant Chief Rosequist in his individual capacity.**

Defendants also move to dismiss Plaintiffs' Section 1983 claim against Chief Rosequist in his individual capacity. Defendants' Supporting Brief, pp. 9-10. Defendants argue that "Plaintiffs do not, at any point in their Amended Complaint, make a single averment that Chief Rosequist acted in his individual capacity to deprive Plaintiffs of a Constitutional right. Plaintiffs do not allege that [he] was present during any of the incidents described in their Amended Complaint. Plaintiffs' allegations against Chief Rosequist are essentially Monell allegations, that Chief Rosequist (or the municipality) failed to train, supervise and monitor Officers Cote and Yanosko and failed to maintain appropriate policies and procedures. These allegations are duplicative of Plaintiffs' conclusory Monell allegations against the Borough of North East in Count III of Plaintiffs' Amended Complaint." Defendants' Supporting Brief, p. 10. Plaintiffs do not specifically address this argument in their Opposition Brief.

Liability under Section 1983 is personal in nature. A defendant who supervised the wrongdoer but did not personally participate in the wrongful act is not liable under Section 1983

10

on a theory of respondeat superior unless he personally directed or had actual knowledge of, and

acquiesced in, the deprivation. Polk County v. Dodson, 454 U.S. 312, 325, 102 S.Ct. 445, 70

L.Ed.2d 509 (1981) (citing Monell, 436 U.S. at 694). See also Evancho v. Fisher, 423 F.3d 347,

353 (3d Cir.2005) (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988) (explaining

"[an individual government] defendant in a civil rights action must have personal involvement in

the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat

superior. Personal involvement can be shown through allegations of personal direction or of

actual knowledge and acquiescence.").

Reviewing the allegations contained in the Amended Complaint relevant to Chief

Rosequist, Plaintiffs do not allege facts that, if proven, would show that Chief Rosequist

personally directed or had actual knowledge of, and acquiesced in, the deprivation of Plaintiffs'

constitutional rights. Accordingly, Defendants' motion to dismiss Plaintiffs' Section 1983 claim

against Chief Rosequist in his individual capacity is granted and said claim dismissed. The

dismissal is without prejudice to file an amendment curing this deficiency, within the time frame

set forth in the accompanying Order.

### D. Plaintiffs' Section 1983 claim against Defendant North East Borough.

Defendants also move to dismiss Plaintiffs' Section 1983 claim against Defendant

Borough on multiple bases. First, they contend that the Section 1983 claim against Defendant

Borough must be dismissed because Plaintiffs have failed to state a cause of action that either

Officer Cote or Officer Yanosko caused a constitutional deprivation. Defendants' Supporting

Brief, pp. 6-7.

With respect to this argument, we agree that to the extent that Plaintiffs' Section 1983 municipal liability claim against Defendant Borough is based upon their allegations that Officer Yanosko threatened them, that part of Plaintiffs' Section 1983 claim against Defendant Borough must be dismissed for failure to state a claim upon which relief can be granted because we have held that this conduct, even if true, did not violate Plaintiffs' rights under the Constitution; absent an underlying constitutional violation, the municipality itself may not be held liable under §1983. See Sanford v. Stiles, 456 F.3d 298, 314 (3d Cir. 2006) (holding that "in order for municipal liability to exist, there must still be a violation of the plaintiff's constitutional rights") (citation omitted). The dismissal is without prejudice to Plaintiffs to file an amendment curing this deficiency, within the time frame set forth in the accompanying Order.

Second, Defendants argue that dismissal of the Section 1983 claim against Defendant Borough is mandated on the basis that:

> Plaintiffs have failed to identify in their Amended Complaint any alleged municipal policy or custom that amounts to deliberate indifference to the rights of people with whom employees of the municipal defendant come into contact. . . . Plaintiffs only generally allege that the conduct of the Officers was pursuant to the custom, practice and procedures of the North East Police Department and the deliberate indifference of Chief Rosequist.

Defendants' Supporting Brief, pp. 7-8. See also Id. at p. 8 ("Plaintiffs here have alleged no past unlawful conduct, no pattern of unlawful conduct, no knowledge or notice on the part of the municipality, no failure by the municipality to take particular precautions, and no causation between said failures and any alleged injury. Plaintiffs only make conclusory allegations, not sufficient under the pleading standards of *Twombly*, *supra*.").

In response, Plaintiffs discuss generally when and how a municipality can be found liable under Section 1983 and conclude "[i]t can hardly be argued that failure to train officers about the

12

Fourth Amendment and its parameters will not result in constitutional violations." Plaintiffs'
Opposition Brief, p. 7.

In order to state a legally sufficient claim for municipal liability under Section 1983, a
plaintiff must plead the existence of a municipal policy or custom and that said policy or custom
caused the alleged constitutional violation. 42 U.S.C. §1983; Monell v. Dept. of Social Services
of N.Y., 98 S.Ct. 2018, 2035-36 (1978). A plaintiff can establish municipal liability in one of
two ways: (1) by showing that a policy existed "'when a decision maker possessing final
authority to establish municipal policy with respect to the action issues an official proclamation,
policy or edict','"or (2) "'by showing that a given course of conduct, although not specifically
endorsed or authorized by law, is so well-settled and permanent to virtually constitute law'."
Hayes v. Erie Cty. Office of Children and Youth, 497 F.Supp.2d 684, 702 (W.D. Pa. 2007)
(quoting Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990)).

"Where, as here, the policy in question concerns a failure to train or supervise municipal
employees, liability under Section 1983 requires a showing that the failure amounts to 'deliberate
indifference' to the rights of persons with whom those employees will come into contact." Carter
v. City of Philadelphia, 181 F.3d 339, 357 (3d Cir.), cert. den'd sub nom, 528 U.S. 1005, 120
S.Ct. 499 (1999) (citing City of Canton v. Harris, 489 U.S. 378, 388, 109 S.Ct. 1197 (1989)).
Moreover, "in order for a municipality's failure to train or supervise to amount to deliberate
indifference, it must be shown that employee will confront a particular situation; (2) the situation
involves a difficult choice or a history of employee mishandling; and (3) the wrong choice by an
employee will frequently cause deprivation of constitutional rights. Id. (citing Walker v. City of
New York, 974 F.2d 293, 297-98 (2d Cir.), cert. den'd, 507 U.S. 972 (1993) (footnote omitted).

13

Relevant to the Section 1983 claim against Defendant Borough, Plaintiffs allege the following in their Amended Complaint. First, Officer Cote "screamed at Gerald Hordych in front of his guests that '[h]e should get a life and if you do not have one I'll give you one[]'" while "[t]o emphasize his point Officer Cote had his billy club in his hand in such manner as to menace and threaten Plaintiffs."Amended Complaint, ¶ 10. Second, "Gerald Hordych turned and went into his residence, at which point Officers Cote and Yanosko, without authority, unlawfully and in violation of the Fourth Amendment of the United States Constitution, entered Plaintiffs' home." Id. at ¶ 12. Third, "North East Borough condoned and tolerated a pattern and practice of unreasonable, menacing, threatening and abusive behavior on the part of the officers of the North East Police Department." Id. at ¶ 17. Fourth, "North East, through deliberate indifference, permitted and tolerated a pattern of unreasonable, menacing and threatening behavior by the officers of the North East Police Department and used practices and procedures that resulted in officers of the North East Police Department violating the constitutional rights of the residents of North East and others." Id. at ¶ 19. Fifth, "[t]he acts, omissions, systematic flaws and customs of North East, caused the Police Officers of the North East Police Department to believe that unreasonable, abusive, menacing and threatening behavior was appropriate, because their actions were tolerated by Chief Rosequist and North West and would not be properly investigated by the appropriate officials of North East and make it very likely that such behavior would continue into the future." Id. at ¶ 20. Sixth, "[p]rior to July 3, 2008, the Borough of North East developed and maintained policies and customs exhibiting deliberate indifference to the constitutional rights of persons in North East, which caused the violation of Plaintiffs' rights." Id. at ¶ 29. Seventh, "[i]t was the policy and/or custom of the Borough of North East to inadequately and improperly

14

investigate citizens' complaints of police misconduct and acts of misconduct were instead

tolerated." Id. at ¶ 30. Eighth, "[i]t was the policy and/or custom of the Borough of North East

to inadequately supervise and train its police officers, including Officers Cote and Yanosko,

thereby failing to discourage further constitutional violations of the part of its police officers."

Id. at ¶ 31. Ninth, "[a]s a result of the above-described policies and customs, police officers of

the Borough of North East, including Officers Cote and Yanosko, believed that their actions

would not be properly monitored by supervisory officers and that misconduct would not be

investigated or sanctioned, but would be tolerated." Id. at ¶ 32. Finally, "[t]he above described

policies and customs demonstrated a deliberate indifference on the part of policymakers of the

Borough of North East to the constitutional rights of persons within the Borough, and were the

cause of the violations of Plaintiffs' rights alleged herein." Id. at ¶ 33.

        Upon review of these allegations, we conclude that said allegations adequately apprise

Defendant Borough of the nature of the constitutional violation at issue, Officer Cote's

threatening conduct towards Gerald Hordych and Officers Cote and Yanosko's improper entry

into the Plaintiffs' home, the injury suffered therefrom, and that the Defendant Borough's failure

to train, supervise, or investigate citizen's complaints, instead tolerating such acts of misconduct

were the cause of the constitutional violation. As such, Plaintiffs have adequately stated a

Section 1983 claim against Defendant Borough. Defendants' Motion to Dismiss the Section 1983

claim against Defendant Borough is denied.

**E. Plaintiffs' Section 1983 claim against Chief Rosequist and Officers Cote and
Yanosko in their official capacities**.

Defendants contend that to the extent Plaintiffs are suing Chief Rosequist and Officers

Cote and Yanosko in their official capacities, said claim must be dismissed with prejudice

because official-capacity actions against local government officials are redundant to actions

against municipalities and Plaintiffs are already suing the Borough. Defendants' Supporting

Brief, pp. 9-10. Plaintiffs do not respond to this argument.

"Official-capacity suits ... 'generally represent only another way of pleading an action

against an entity of which an officer is an agent.' " Kentucky v. Graham, 473 U.S. 159, 165, 105

S.Ct. 3099, 87 L.Ed.2d 114 (1985) (quoting Monell v. Department of Social Services of Ciy of

New York, 436 U.S. 658, 690, 98 S.Ct. 2018 (1978)). Such suits are, "in all respects other than

name, to be treated as a suit against the entity. Id. at 166. They are "not a suit against the official

personally, for the real party in interest is the entity." Id. (emphasis in original). Therefore,

"'[w]here a suit is brought against a public official in his [or her] official capacity, the suit is

treated as if [it] were brought against the governmental entity of which he [or she] is an official.'"

McGreevy v. Stroup, 413 F.3d 359, 369 (3d Cir.2005) (citation omitted).

While Defendants contend that dismissal of the suit against Chief Rosequist and Officers

Cote and Yanosko is mandated, we disagree. The redundancy of the Section 1983 official

capacity claims against Chief Rosequist and Officers Cote and Yanosko and the Section 1983

claim against Defendant Borough does not necessarily require the Court to dismiss the official

capacity claim against Chief Rosequist and Officers Cote and Yanosko. See Swendon v.

Borough, 2008 WL 5051399, *5 (W.D. Pa. Nov. 21, 2008) (Schwab, J.) (citing Capresecco v.

16

Jenkintown Borough, 261 F.Supp.2d 319 (E.D.Pa.2003) (claims against manager and chief in their official capacities would not be dismissed as redundant where defendants had to answer charges against them in their individual capacities and so there was no laudable purpose to dismissal of the official capacity claims).  That said, the Court will exercise its discretion to dismiss the redundant Section 1983 official capacity claims against Chief Rosequist and Officers Cote and Yanosko in this case because we find that the claims unnecessarily clutter the case, we have dismissed the Section 1983 claim against Chief Rosequist as an individual, and these claims are likely to be confusing to a jury called upon to sort out official versus individual liability with respect to Officers Cote and Yanosko. Defendants' motion to dismiss Plaintiffs' Section 1983 claims against Chief Rosequist, Officer Cote and Officer Yanosko is granted with prejudice to the extent the claims have been brought against them in their official capacities as Chief of Police and police officers for Defendant Borough.

### F. Claims against Defendant North East Police Department.

Finally, the Defendants argue that the North East Police Department is merely a sub-unit of the Borough of North East and therefore the Police Department is not a proper party and should be dismissed with prejudice. Defendants' Supporting Brief, pp. 10-11.  Again, Plaintiffs do not respond to this argument.

Given that it is not disputed that the Borough of North East Police Department is a sub-division of Defendant Borough, we find that it is not a proper defendant in this action and we will dismiss the Plaintiffs' Section 1983 claim against the Borough of North East Police Department with prejudice. See Martin v. Red Lion Police Dep't, 146 Fed. Appx. 558, 562 n. (3d Cir.2005) (citing Johnson v. City of Erie, 834 F.Supp. 873, 878-79 (W.D. Pa.1993)); Townsley v.

17

West Brandywine Tp., 2006 WL 1147267, *3  n. 1 (E.D. Pa. April 26, 2006).

**IV.    Conclusion.**

Defendants' Motion to Dismiss is granted in part and denied in part. An appropriate

Order follows.

April 27, 2010                                                *Maurice B Cahill, Jr.*

                                                             Maurice B. Cohill, Jr.
                                                             Senior District Court Judge

18