| | | |
|---|---|---|
| **Gerald Hordych and Lori Hordych,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 10-16 Erie** |
| | ) | |
| **Borough of North East et al.,** | ) | |
| | ) | |
| **Defendants** | ) | |

## OPINION

Pending before the Court is "Defendants' Motion for Summary Judgment" (ECF 34)

pursuant to Fed.R.Civ.P. 56. Plaintiffs' (Gerald Hordych and Lori Hordych) Amended

Complaint against Defendants (Officer Sylvain Cote, Officer James D. Yanosko, and North East

Borough) seeks monetary damages pursuant to 42 U.S.C. §1983. Specifically, Plaintiffs claim

that Defendants violated their rights under the Fourth and Fourteenth Amendments to the United

States Constitution. For the reasons set forth below, Defendants' Motion for Summary Judgment

is granted in part and denied in part.

### I.      Standard of Review

Summary judgment pursuant to Fed.R.Civ.P. 56 is proper when "the pleadings,

depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord* Saldana v. Kmart Corp., 260 F.3d 228,

231-32 (3d Cir. 2001). The moving party is not required to refute the essential elements of the

non-movant's cause of action, but needs only to point out the absence or insufficiency of non-

movant's evidence offered in support of those essential elements. Celotex Corp. v. Catrett, 477

U.S. 317, 322-23 (1986). We note that an amendment to the text of Rule 56 became effective on

1

December 1, 2010. However, this amendment did not result in a substantive change to the standard; the word "issue" within subsection (c) has been changed to "dispute." Even so, we quote the language of the version of the Rule that was in effect at the time the parties moved for summary judgment as it is appropriate to dispose of the motion under that version. *See* Fairclough v. Wawa, Inc., 2010 WL 2509327, at *3 n. 3 (3d Cir. Dec. 23, 2010).

As defined in Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the standard provides that "the mere existence of some alleged factual dispute between parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48. A fact is material when it might affect the outcome of the suit under the governing law, and an issue of material fact is genuine if the evidence is such that only a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence." Id. at 255. Instead, the Court must view the evidence in the light most favorable to the non-movant, and must also draw all reasonable inferences in the non-movant's favor. Id.

## II.    Factual Allegations

Viewing the evidence in a light most favorable to the non-movant, Plaintiffs, below is a recitation of the facts relevant to the pending motion.

On July 3, 2008, Plaintiffs Gerald Hordych and Lori Hordych, who are married and reside in North East Borough, Pennsylvania, hosted a party at their home. Affidavit of Gerald Hordych at 1; Deposition of Gerald Hordych at 14. At the height of the party, they had as many as 200 guests in attendance. Deposition of Gerald Hordych at 14. Officers Cote and Yanosko arrived at Plaintiffs' home at or around midnight in response to a noise complaint. Affidavit of

2

Gerald Hordych at 1; Deposition of Gerald Hordych at 28. Upon reaching the residence, they asked several guests if they could speak with the owner of the home. Affidavit of Gerald Hordych at 1; Deposition of Gerald Hordych at 28. At this time about fifty guests were present, and the Plaintiffs' garage door was open. Deposition of Gerald Hordych at 14, 23. Plaintiffs' garage, which is attached to their home and contains a family room, has a door that leads to the backyard. Deposition of Gerald Hordych at 22-23. Mr. Hordych greeted the officers outside of the garage, at which time Officer Yanosko screamed that they had received a noise complaint and demanded the band stop playing immediately. Affidavit of Gerald Hordych at 2. Mr. Hordych felt intimidated by both officers who were beating into their hands, in an aggressive and threatening manner, what appeared to be flashlights. Deposition of Gerald Hordych at 26.

Mr. Hordych told the officers that he would stop the band, and that he did not want any problems. Affidavit of Gerald Hordych at 2. As Mr. Hordych walked away from the officers, Officer Cote screamed, "We will follow you to make sure you comply!" Id. at 2; Deposition of Gerald Hordych at 21. Without receiving permission from Mr. Hordych, the officers followed him into his garage and through the door out to the backyard. Affidavit of Gerald Hordych at 2; Deposition of Gerald Hordych at 23; Deposition of James Yanosko at 46. Mr. Hordych did not tell the officers to stay where they were or otherwise object to their entry into the garage. Deposition of Gerald Hordych at 30. However, Mr. Hordych stated that he felt physically threatened by Officer Cote's presence. Affidavit of Gerald Hordych at 2.

Upon entering the backyard, Mr. Hordych told the band to stop playing, which the band did. Affidavit of Gerald Hordych at 2. As Officer Cote entered into the backyard he screamed at the crowd, "You people need to get a life or I will give you one." Deposition of Gerald Hordych at 21. The officers were beating their flashlights in a threatening and aggressive manner while

3

Officer Cote uttered this statement. Id. at 21; Deposition of Lori Hordych at 14-15. After the music stopped, the officers exited the yard through the garage, again without receiving permission to enter the garage from Plaintiffs. Affidavit of Gerald Hordych at 2; Deposition of Gerald Hordych at 34.

Police officers of the Borough of North East received training at a police academy and also attended mandatory in-service training put forth by the Commonwealth of Pennsylvania under Act 180. Deposition of Sylvain Cote ("Deposition of Cote") at 18; Deposition of Charles E. Rosequist ("Deposition of Rosequist") at 15-16. The Northwest Training Center, run by the Pennsylvania State Police, also conducted voluntary training opportunities for the police officers of North East Borough. Deposition of Rosequist at 15; Deposition of Cote at 18. Other than a deadly force policy, the Borough of North East did not have written procedures or policies covering training or weapons. Deposition of Rosequist at 17.

## III.     Legal Analysis

### A.     Liability of Officer Cote and Yanosko – Whether the police officers are liable for the alleged violations of Plaintiffs' Fourteenth and Fourth Amendment rights.

Section 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. §1983. This section "provides a cause of action for any person who has been deprived of rights secured by the Constitution ... by a person acting under color of law." Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007).

4

When a police officer acting under the authority of the state violates a person's constitutional rights, he is liable under §1983 unless he falls within the protection of qualified immunity. Curley, 499 F.3d at 206. In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court of the United States established a two-step test for determining whether a government official was entitled to qualified immunity. Saucier, 533 U.S. at 201. In the first step, the court must determine whether the government official was acting under the color of the law, and whether "the officer's conduct violated a constitutional right." Curley, 499 F.3d at 207. At the second step the court must determine whether the constitutional right that was violated was clearly established, and "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id.

However, it is important note that in Pearson v. Callahan, the Supreme Court held that while the two-step test in Saucier is often appropriate, it is no longer regarded as mandatory. Pearson v. Callahan, 129 S.Ct. 808, 818 (2009). Instead, "the judges of the district courts… should be permitted to exercise their sound discretion in deciding which of the two prongs of qualified immunity analysis should be addressed first in light of the circumstances." Pearson, 129 S.Ct. at 818. For purposes of this case, we will first make the determination of whether or not, viewing the evidence of record in a light most favorable to Plaintiffs, a reasonable jury could find that Plaintiffs' Fourth and Fourteenth Amendment rights were violated, and then proceed to the determination of whether the defendant police officers are entitled to qualified immunity.

### 1. First Step of §1983 Analysis: Whether the officers' conduct deprived Plaintiffs of their rights guaranteed under the Fourth and Fourteenth Amendments.

For Plaintiffs to recover they must establish that the defendant officers acted under color of law to deprive them of their constitutional rights. It is not disputed that the police conduct

5

complained of was committed by persons acting under color of state law. Thus, our focus will be on the first element – whether or not, viewing the evidence of record in a light most favorable to Plaintiffs, a reasonable jury could find that the defendant officers' conduct violated Plaintiffs' rights under the Fourteenth and Fourth Amendments of the Constitution.

### i. **Plaintiffs' Fourteenth Amendment claim**

Plaintiffs contend that Officers Cote violated their civil rights when he yelled "You people need to get a life or I will get you one!" and threatened Plaintiffs and the other guests with his flashlight. Plaintiffs' Brief in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Opposition Brief") at 9. Defendant Officer Cote argues that Plaintiffs failed to offer facts to support this claim. Defendants' Memorandum of Law in Support of Motion for Summary Judgment ("Defendants' Supporting Brief") at 11. Defendant Cote states that threatening language alone is not enough to support a Fourteenth Amendment claim, but rather something more is needed, such as physical violence. Id. at 11-12.

Plaintiffs concede that verbal harassment or threats alone are not enough to support a Fourteenth Amendment claim, and acknowledge that some reinforcing act needs to accompany such threats or harassment. Plaintiff's Opposition Brief at 9. Plaintiffs, however, argue that Officer Cote's act of pounding his flashlight into his hands while he yelled was the reinforcing act that accompanied the verbal harassment. Id. For support, Plaintiffs cite Northington v. Jackson, 973 F.2d 1518 (10th Cir. 1992) (a guard put a gun to an inmate's head and threatened to shoot); and Douglas v. Marino, 684 F.Supp. 395 (D.N.J. 1988) (a prison employee threatened the inmate with a knife). In response, Defendant Cote contends that these cases are distinguishable from the present case since both cited cases involve "direct threats of death with a deadly

6

weapon" and such threat of physical violence is lacking in the present case. Reply Brief in Support of Defendants' Motion for Summary Judgment ("Defendants' Reply Brief") at 2.

An individual's liberty interest in personal security, which is protected by the due process clause of the Fourteenth Amendment, includes the right to be "free from, and to obtain judicial relief for, unjustified intrusions on personal security." Ingraham v. Wright, 430 U.S. 651, 673 (1977). However, "it has been recognized that the use of words generally cannot constitute an assault actionable under §1983." Lindsey v. O'Connor, 2008 WL 4722617 *4 (M.D. Pa. 2008). Verbal abuse or harassment alone are generally not actionable under §1983 as these do not amount to a constitutional violation. Hopson v. Fredericksen, 961 F.2d 1374, 1378 (8th Cir. 1992). Instead, some reinforcing act is needed to supplement the threats or harassment in order to amount to a constitutional violation. Lindsey v. O'Connor, 2008 WL 47222617 *4 (M.D. Pa. 2008). Such an act escalates the threat beyond mere words. Id. at *4.

The court's decision in McFadden v. Lucas, 713 F.2d 143 (5th Cir. 1983) is instructive. The court held "not every personal hurt by a state officer constitutes a violation of the [F]ourteenth Amendment." McFadden, 713 F.2d at 146. In McFadden, the plaintiff, an inmate a state penitentiary, was forced to shave his beard to confirm with prison regulations. Id. at 144. The court focused on specific factors to determine whether the state officers' conduct crossed the constitutional line that would make it actionable under §1983. Id. at 146. Such factors included "the amount of force used in relationship to the need presented, the extent of the injury inflicted, and the motives of the state officer." Id. The court held that if:

The state officer's action caused severe injuries, was grossly disproportionate to the need for action under the circumstances and was inspired by malice rather than merely careless or unwise excess zeal so that it amounted to an abuse of official power that shocks the conscience, it should be redressed under Section 1983.

7

Id. at 146. It was of great importance to the McFadden court that the plaintiff did not allege that he was physically assaulted. Id. at 147. As such, the court held that while the officers' actions may have been threatening to the plaintiff, since there was an absence of physical abuse, under the facts this was not an actionable claim under §1983 and did not shock the conscience of the court. Id.

Similarly, the court in Hopson v. Fredericksen, 961 F.2d 1374 (8th Cir. 1992), held that without physical violence, the plaintiff's claim was not actionable under §1983. Fredericksen, 961 F.2d at 1379. The plaintiff had alleged that an officer uttered a racial slur and threatened "knock" the plaintiff's teeth out of his mouth if he continued to remain silent and did not answer police questions. Id. at 1378. Due to the lack of physical violence, the court reasoned that the officer's conduct "failed to rise to the level of a 'brutal' and 'wanton act' of cruelty." Id. at 1378-79. Thus, like McFadden, the officer's conduct did not cross the constitutional line that would make it actionable under §1983.

The court in Lindsey v. O'Connor, 2008 WL 4722617 (M.D. Pa. 2008), also held that verbal harassment or threats alone, not accompanied by any physical contact, is constitutionally insufficient. Lindsey, 2008 WL 4722617 at *4. In Lindsey, the plaintiff had alleged that he was subjected to verbal harassment and threats made by the prison guard defendants. Id. at *3. The court distinguished the plaintiff's case from those in Northington v. Jackson, supra, and Douglas v. Marion, supra, in that in both Northington and Douglas the physical actions taken by the guards escalated their threats beyond mere words, while in Lindsey the plaintiff did not allege any physical violence or abuse. Id. at *4. The court held that such physical reinforcing acts, accompanying the verbal threats, established a viable constitutional claim. Id. The court also reasoned that a gesture accompanied by verbal threats, for example, lunging at a prisoner with a

8

closed fist, still does not escalate a threat beyond mere words to equate a constitutional claim. Id. (citing Wright v. O'Hara, 2004 WL 1793018 *7 (E.D. Pa 2004)). Rather, some type of physical violence is needed in addition to any alleged verbal harassment or threats to establish a constitutional claim. Id.

Even viewing the evidence of the record in a light most favorable to Plaintiffs and assuming that Officer Cote yelled at the partygoers, including the Plaintiffs, "You people need to get a life or I will get you one!" while he beat his flashlights into his hands, we find that such facts do not establish a violation of Plaintiffs' rights under the Fourteenth Amendment of the United States Constitution. In so holding, it is significant that Officer Cote's statement was not directed towards Plaintiffs but instead was to the crowd in general. As Defendant Cote argues, and we agree, Plaintiffs failed to establish that any threat was directed to them. Defendants' Supporting Brief at 13. Thus, this case is distinguishable from Northington and Douglas, where the parties were the direct recipients of the verbal threats and physical actions of the officers. Moreover, unlike Northington and Douglas, the officer in this case did not use any physical act directed towards Plaintiffs to reinforce his verbal threat. From the facts established in the record, there is no evidence that the Officer Cote used his flashlight as a weapon. Instead, the beating of the flashlight could be considered a gesture that accompanied the verbal threats, which as the court in Lindsey held, is not enough to establish a constitutional claim (gestures are not reinforcing acts).

Since the evidentiary record would not allow a reasonable jury to find that the above-described conduct by Officer Cote violated Plaintiffs' Fourteenth Amendment rights, Defendants' motion for summary judgment pertaining to Plaintiffs' §1983 claim, to the extent it is premised upon a Fourteenth Amendment violation, must be granted.

## ii. **Plaintiffs' Fourth Amendment claim**

Plaintiffs contend that Officers Cote and Yanosko violated their Fourth Amendment rights when they entered Plaintiffs' garage without authority to do so. Plaintiffs' Opposition Brief at 7. Defendants argue that Plaintiffs' Fourth Amendment rights were not violated in that Plaintiffs not only failed to provide facts needed to establish that they had a reasonable expectation of privacy, but also that Mr. Hordych gave implied consent to the officers to enter into the garage. Defendants' Supporting Brief at 7, 10. In response, Plaintiffs assert that physical entry into a private home is "the 'chief evil' against which the Fourth Amendment is directed." Plaintiff's Opposition Brief, pg. 6. Plaintiffs argue that they did have a reasonable privacy expectation in their garage, and that consent, either express or implied, was never given to the officers to enter their garage. Plaintiff's Opposition Brief at 8.

### 1. **Plaintiffs had a legitimate expectation of privacy in their attached garage.**

A search within the meaning of the Fourth Amendment occurs when "an expectation of privacy that society is prepared to consider reasonable is infringed." United States v. Jacobsen, 466 U.S. 109, 113 (1984). The Fourth Amendment provides protection to people, not places, and as such it protects people from unreasonable intrusions into an individual's privacy. Katz v. United States, 389 U.S. 347, 353 (1967). Thus, mere trespassing onto an individual's property does not amount to a Fourth Amendment violation, for "violations of a person's Fourth Amendment rights [has been decoupled] from trespassory violation of his property." Kyllo v. United States, 533 U.S. 27, 32 (2001). However, as this Court held in Grine v. Colburn's Air Conditioning and Refrigeration, 2009 WL 2634179 (W.D. Pa. 2009), trespassing onto one's property may violate the Fourth Amendment if the government trespassed into an area in which defendants had a reasonable expectation of privacy. Grine, 2009 WL 2634179 at *13.

10

To determine whether a person has a reasonable expectation of privacy in a particular place the individual must show that: (1) the person exhibited an actual (subjective) expectation of privacy, and (2) that expectation is one that society is prepared to recognize as reasonable. Katz v. United States, 389 U.S. 347, 363 (1967) (Harlan, J., concurring). However, "what a person knowingly exposes to the public, even in his own home... is not subject to Fourth Amendment protection." Id. at 351. Instead, what a person seeks to keep private, even in an area accessible to the public, may be constitutionally protected. Id. The standard is that constitutional protection is provided to a person who justifiably relies upon the privacy of a particular place. Id.

It is well established that the Fourth Amendment protections extend not only to a person's home but also to the curtilage surrounding the property. United States v. Dunn, 480 U.S. 294, 300-01 (1987); Estate of Smith v. Marasco, 318 F.3d 497, 518 (3d Cir. 2003). The Dunn court examined four factors in determining whether an area falls within the curtilage of a property. These factors included: The proximity of the home to the area claimed to be curtilage, whether the area is included within an enclosure surrounding the home, the nature of the use of the area, and the steps taken by the resident to protect the area from observation by people passing it. Dunn, 480 U.S. at 301. If a structure falls within the curtilage, an individual has a legitimate reasonable expectation of privacy in that structure. Id. When within the curtilage, that area is awarded the same Fourth Amendment protections that attached to the home. Oliver v. United States, 466 U.S. 170, 180 (1984).

In Taylor v. United States, 286 U.S. 1 (1932), the Supreme Court applied Fourth Amendment's protections to a garage. Taylor, 286 U.S. at 5. In Taylor, government agents entered and searched the defendant's garage, which was adjacent, but not attached, to his home,

11

without a warrant or consent. Id. at 3. The Court held that such entry into the garage was unreasonable and a violation of the defendant's Fourth Amendment rights. Id. at 5. Similarly in, Estate of Smith v. Marasco, 318 F.3d 497 (3d Cir. 2003), the appellate court concluded that a garage that "was in fact part of the structure of the house itself," i.e. attached, was part of the home's curtilage. Marasco, 318 F.3d at 521.

The fact that Plaintiffs' garage door was open does not alter the applicable analysis. As the court held in United States v. Oaxaca, 233 F.3d 1154 (9th Cir. 2000), the Fourth Amendment does not protect only "hermetically sealed residences." Oaxaca, 233 F.3d at 1157. In Oaxaca, government agents entered the defendant's attached garage through the open garage door to arrest the defendant. The court reasoned that the attached garage was part of the defendant's home, thus when the officers entered the defendants home they violated his constitutional rights. Id. at 1158. The court further reasoned that the open garage door did not diminish the defendant's Fourth Amendment rights. Id. at 1157 (citing Payton v. New York, 445 U.S. 573, (1980)) (court held that where police had seen the suspect through an open door, and walked into the room to arrest the suspect, suspect's Fourth Amendment rights had been violated). Thus, "the Fourth Amendment has drawn a firm line at the entrance of the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." Oaxaca, 233 F.3d at 1158 (quoting Payton, 445 U.S. at 590).

Plaintiffs' attached garage fell within the curtilage of their home and thus was afforded the same Fourth Amendment protections as their home. Therefore, contrary to Defendants' argument, Plaintiffs had a reasonable expectation of privacy in their garage. The fact that the garage door was left open has no effect on the legal analysis of Plaintiffs' privacy expectations. As in Oaxaca, the open garage door did not diminish the reasonable privacy expectations

Plaintiffs had in their garage; the Fourth Amendment protections afforded to the garage remained intact.

We further find that the fact that Plaintiffs opened their home to guests did not diminish their privacy expectations in their home and attached garage, or negate any Fourth Amendment protections. Plaintiffs correctly state "when a person opens his home to a number of guests, he does not open it to government intrusion." Plaintiffs' Opposition Brief at 7. As established in Katz, *supra*, what a person seeks to keep private, even in an area accessible to the public, is constitutionally protected. Katz, 389 U.S. at 351. Drawing all reasonable inferences in favor of Plaintiffs as the non-moving party, it can be reasoned that Plaintiffs intended to keep the social event private. Plaintiff's Brief in Opposition at 7. While up to 200 guests were on the property at one point, since Plaintiffs had a reasonable expectation of privacy in their party any warrantless entry into the garage was a violation of their Fourth Amendment rights.

Defendants' Motion for Summary Judgment on Plaintiffs Fourth Amendment claim is denied to the extent that it is based on the argument that Plaintiffs did not have a reasonable expectation of privacy with respect to their garage.

### 2. Issue of implied consent will need to be determined at trial.

Defendants also argue that despite any privacy expectations Plaintiffs may have had in their garage, Mr. Hordych gave the officers consent to enter into the garage. Defendants' Supporting Brief at 8. This consent, they argue, was implied and therefore, the officers did not violate Plaintiffs' Fourth Amendment rights when they entered the garage. Defendants' Supporting Brief at 8, 10. To the contrary, Plaintiffs argue that consent could not have been given in this situation since Mr. Hordych felt physically threatened by the intimidating and aggressive actions of the officers. Plaintiffs' Opposition Brief at 8.

13

If a search is conducted without a warrant, such a search is "per se unreasonable...subject only to a few specifically established and well-delineated exceptions." Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). One such exception is a search authorized by consent, which may be expressed or implied. Id. at 235. Consent must be given voluntarily, and the determination of voluntariness is a question of fact to be determined by the totality of the circumstances. Id. at 223-27. Critical factors comprising a totality of the circumstances inquiry include: "the setting in which the consent was obtained, the parties' verbal and nonverbal actions, and the age, intelligence, and educational background of the consenting individual." United States v. Givan, 320 F.3d 452, 459 (3d Cir. 2003).

The Fourth Amendment also requires that consent not be coerced through "explicit or implicit means, [or] implied by threat or covert force." Schneckloth, 412 U.S. at 229. It does not matter how the coercion was applied (direct or subtle), for if coercion is found to be present, "the resulting 'consent' would be no more than a pretext for the unjustified police intrusion against which the Fourth Amendment is directed." Id. at 229. Thus, coerced consent is invalid and the search performed under such consent is deemed unreasonable. Id. at 232.

Defendants state, and we agree, that consent "need not be expressed in a particular form but 'can be found from an individual's words, acts or conduct.'" Welsch v. Twp. of Upper Darby, 2008 WL 3919354, *4-5 (E.D. Pa. 2008). However, the existence of consent, especially implied consent, is not to be lightly inferred. United States v. Shaibu, 920 F.2d 1423, 1427 (9th Cir. 1989). In United States v. Shaibu, the court reasoned that an affirmative act in response to a police request was needed in order to infer implied consent. Shaibu, 920 F.2d at 1428. There, the police officers followed the defendant into his home when the defendant turned and walked away from the officers, leaving the door open. Id. at 1425. The court held that without some

14

affirmative act in response to a police request, consent could not be implied from the defendant's failure to object to police entry into his home. Id. at 1428.

In Welsch v. Twp. of Upper Darby, *supra*, the court held that consent was implied from the cooperative behavior of the plaintiff's brother and brother's son. Welsch, 2008 WL 3919354 at *5. The plaintiff's brother and brother's son had cooperated with the police in locating guns in the home of the plaintiff's father after an alleged suicide by answering police requests. Id. at *2. Plaintiff argued that consent was never given to the officers. The court disagreed and reasoned that the cooperation of the brother and his son was the affirmative action that indicated to the officers that they had consent to search the home. Id. at *5.

In United States v. Gray, 71 F.Supp.2d 1081 (D.Kan. 1999), a criminal case, the court held that consent to enter could not be implied solely from the defendant's failure to object to the entry. Gray, 71 F.Supp.2d at 1085. In Gray, a police officer knocked on the door of the defendant's trailer and asked the defendant for identification. Id. at 1082. The defendant responded that she would go get her identification and left the door to procure it, leaving the door open. Id. The officer followed her into the trailer without being invited, and the defendant did not protest the officer's presence. Id. The court noted that absence of protest by the defendant is "simply a fact to be considered in determining whether the government has established implied consent." Id. at 1084. However, this factor is not controlling when looking at the totality of the circumstances. Id.

Viewing the evidence in a light most favorable to Plaintiffs we find that there is a genuine issue of material fact as to whether, based upon both the officers' conduct and Mr. Hordych's conduct, consent was implied and voluntarily given, or was the result of coercion. A reasonable jury could conclude that Mr. Hordych did not exhibit any affirmative action to indicate to the

15

officers that they had consent to enter into the garage. A reasonable jury also could conclude that the officers' conduct was coercive. Defendants' Motion for Summary Judgment of the Plaintiffs' Fourth Amendment claim is denied to the extent that it is based on the argument that Plaintiffs consented to the defendant officers' entry into their garage.

## 2. Second Step of §1983 Analysis: Qualified Immunity

Defendants argue that if a constitutional violation is found by this Court, the officers are entitled to qualified immunity since the constitutional right was not clearly established at the time of the alleged occurrence. Defendants' Supporting Brief at 14. Additionally, Defendants argue that the defendant officers' "reliance on implied consent (even if incorrect) was a reasonable mistake of law under the circumstances." Id. at 16. In response, Plaintiffs argue that the Fourth Amendment is a clearly established right and a reasonable officer would have known not to enter the garage; thus, the defendant officers are not eligible for qualified immunity. Plaintiffs' Opposition Brief at 10.

As stated earlier, upon violating an individual's constitutional rights, police officers are entitled to qualified immunity if their conduct "does not violate clearly established statutory or constitutional rights." Yarris v. Cnty. of Delaware, 465 F.3d 129, 140-41 (3d Cir. 2006). Police officers acting under the color of state law are not afforded protection when they are "plainly incompetent or...knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). However, protection is provided to a police officer if he "made a reasonable mistake about the legal constraints on his actions." Ciambrone v. Smith, 2008 WL 4378405, *7(D.N.J. 2008). The police officers must demonstrate that the constitutional rights were not clearly established at the time the violation occurred. Yarris, 465 F.3d at 140-41. As the Supreme Court reasoned in Pearson v. Callahan, this inquiry turns on the "objective legal reasonableness of the action,

16

assessed in the light of the legal rules that were clearly established at the time it was taken."
Pearson , 129 S.Ct. at 822. In order for a constitutional right to be clearly established, a
reasonable officer would have to understand that what he or she is doing violates that right.
Hope v. Pelzer et al., 536 U.S. 730, 739 (2002).

　　While "[qualified] immunity ordinarily should be decided by the court long before trial,"
when disputed issues of material facts are present such disputes should be resolved by a jury at
trial. Curley v. Klem 499 F.3d 199, 208 (3d Cir. 2007). Although qualified immunity is "an
objective question to be decided by the court as a matter of law," it is for the jury to determine
issues of disputed material facts essential to the qualified immunity question. 499 F.3d at 210.
*See also* Johnson v. Jones, 515 U.S. 304, 313 (1995) (qualified immunity may turn on disputed
issues of facts); Kirley v. Williams, 330 Fed.Appx. 16, 20 fn. 5 (3d Cir. 2009) (disputed issues of
fact necessary for the resolution of the qualified immunity question must be submitted to the
jury); Monteiro v. City of Elizabeth, 436 F.3d 397, 405 (3d Cir. 2006) ("When qualified
immunity depends on disputed issues of fact, those issue must be determined by the jury.").

　　It is clearly established law that an attached garage is part of a home's curtilage and
therefore, falls under the protection of the Fourth Amendment. *See* Estate of Smith v. Marasco,
318 F.3d 497 (3d Cir. 2003). As explained above, this case contains disputed issues of fact with
respect to implied consent based upon both Mr. Hordych's and the defendant officers' conduct.
Therefore, if there was no implied consent, then the defendant officers' entry into the garage was
not reasonable. Defendants' Motion for Summary Judgment on Plaintiffs' §1983 claim is denied
to the extent it is premised upon a qualified immunity argument. Defendants, of course, are free
to raise qualified immunity again at the appropriate time during trial.

**B. Municipal Liability.**

With respect to the Plaintiffs' §1983 claim against Defendant North East Borough, Defendants argue that "Plaintiffs have failed to identify any municipal policy or custom or failure in the Officers' training that led to an alleged constitutional violation." Defendants' Motion for Summary Judgment at ¶8. Therefore, Defendants contend that summary judgment should be granted in the Borough's favor as to Plaintiffs' §1983 claim against it. Defendants' Supporting Brief at 19.

Municipalities cannot be held liable under § 1983 based solely upon a theory of respondeat superior, but instead can only be held liable if the municipality itself caused the constitutional violation at issue. Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 694-95 (1978). To hold a municipality liable the plaintiff must identify a policy or custom that caused his or her injury. Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000). If there is no constitutional violation by a municipality's employees, there can be no municipal liability. Turzai v. City of Pittsburgh, 2011 WL 635269, *21 (W.D. Pa. 2011).

Plaintiffs' §1983 claim against Defendant Borough North East is based upon the argument that the Borough failed to provide its officers with adequate training. Plaintiffs' Opposition Brief at 12. To recover under a failure to train theory, a plaintiff must show that the "failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989). Evidence of deliberate indifference to the rights of persons that come into contact with police will amount to a policy or custom that is actionable under §1983. City of Canton, 489 U.S. at 389. If the identified policy or custom "does not facially violate federal law, causation can be established only by 'demonstrat[ing] that the municipal action was taken with deliberate indifference as to its known

18

or obvious consequences. A showing of simple or even heightened negligence will not suffice.'"
Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997).

As a general rule, a plaintiff must "provide evidence of a pattern of constitutional violations in order to premise municipal liability on a failure-to-train theory." Must v. West Hills Police Dep't, 126 Fed.Appx. 539, 544 (3d Cir. 2005). However, there is a limited exception to this general rule. Must, 126 Fed.Appx. at 544. A single constitutional violation can provide a basis for municipal liability for a failure to train claim without establishing a pattern of violations, if a plaintiff shows that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights" that inaction amounts to deliberate indifference. Christopher v. Nestlerode, 240 Fed.Appx. 481, 489 (3d Cir. 2007) (quoting City of Canton, 489 U.S. at 391). Although it is possible, proving deliberate indifference in the absence of a pattern of underlying constitutional violations is a difficult task. Carswell v. Borough of Homestead, 381 F.3d 235, 244 (3d Cir. 2004).

In Carswell v. Borough of Homestead, the appellate court held that not only must the plaintiff prove deliberate indifference, but he or she must also prove that there was a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." Carswell, 381 F.3d at 244 (quoting City of Canton, 489 U.S. at 385 (1989) (for liability to attach the identified deficiency in a city's training must be closely related to the constitutional injury; plaintiff must prove that the inadequate training actually caused the police officer's indifference to her constitutional rights.). In Carswell, the plaintiff, wife of a man fatally shot by a police officer, alleged that her husband's death was the result of a constitutional violation (specifically excessive force) by the police officer. Id. at 237. The plaintiff pointed to evidence in the record describing proper police procedures that the borough officer did not follow, namely that a police

officer should not draw a weapon on an unarmed suspect. Id. at 239. The court concluded that

the plaintiff failed to establish both deliberate indifference and causation. Id. at 245. The court

reasoned that the annual in-service courses, the lack of any pattern of constitutional violations,

and lack of evidence establishing inadequate training all supported their finding. Id. Thus, the

court held that the municipality was not liable. Id.

> Plaintiffs argue as follows:

> In the instant case, other than requiring officers to train at the Police
> Academy before coming onto the force, North East Borough provides no
> mandatory training to its officers. Officer Yanosko attended the Police
> Academy in 1983. Officer Cote attended the Police Academy in 1992.
> Further, other than a deadly weapons policy, North East Borough has no
> written conduct policy for its officers.

> The failure of North East Borough to provide even the most rudimentary
> training to its officers after they graduate from the Police Academy is a clear
> indication of reckless indifference. The failure to provide any training was
> very likely to result in a violation of constitutional rights. In fact, it can be
> said that the failure of the Borough to provide any training for its officers and
> the failure of the Borough to have a personal conduct manual was an open
> invitation for its officers to violate people's constitutional rights.

Plaintiffs' Opposition Brief at 12 (citations omitted).

Even viewing the facts of the record in a light most favorable to Plaintiffs, we find that

the record does not establish that the defendant officers were inadequately trained. Plaintiffs

point to the fact that officers only received training at a police academy and argue that the failure

to provide more training was a deliberate indifference to a person's constitutional rights.

Plaintiffs' Opposition Brief at 12. However, Plaintiffs fail to cite to Chief Rosequist's deposition

where he stated that North East police officers attend mandatory in-service training put forth by

the Commonwealth of Pennsylvania under Act 180. Deposition of Rosequist at 15. Plaintiffs

also provide no evidence that shows that a pattern of constitutional violations existed. While a

single constitutional violation is enough to establish a failure to train claim, the Plaintiffs do not

offer any evidence to support the finding that there was an obvious need for training or that not providing such training would likely result in a violation of constitutional rights. There is also a lack of evidence in the record to establish that the failure to train the officers actually caused the indifference to their constitutional rights.

For all the above reasons, we conclude that Plaintiffs failed to present evidence from which a reasonable jury could find §1983 municipal liability on the part of the Defendant Borough. As such, Defendants' Motion for Summary Judgment on Plaintiffs' §1983 municipal liability claim against Defendant North East Borough must be granted.

## IV.  Conclusion

Defendants' Motion for Summary Judgment is: (1) granted to the extent that Plaintiffs' §1983 claim against Defendant Cote is premised upon a Fourteenth Amendment violation, (2) denied to the extent that Plaintiffs' §1983 claim against Defendants Cote and Yanosko is premised upon a Fourth Amendment violation, and (3) granted as to Plaintiffs' §1983 claim against Defendant Borough of North East. An appropriate Order follows.

July _21_, 2011

_Maurice B. Cohill, Jr._
Maurice B. Cohill, Jr.
Senior United States District Judge

21